## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ROBERTA LINDENBAUM**, individually
and on behalf of all others similarly situated,

　　　　*Plaintiff*,

　　v.

**DIRECT ENERGY SERVICES LLC**, a
Delaware limited liability company, and
**JOHN DOE CORPORATIONS 1-10**,

　　　　*Defendants*.

Case No.: 1:20-cv-2731

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Roberta Lindenbaum ("Lindenbaum" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Direct Energy Services LLC ("Direct Energy") and John Doe Corporations 1-10, (("John Doe Corporations") (collectively the "Defendants")) to: (1) stop their practice of placing calls using "an artificial or prerecorded voice" to the residential landline telephones of consumers nationwide without their prior express written consent; (2) stop Defendants from calling consumers who are registered on the National Do Not Call Registry; and (3) obtain redress for all persons injured by their conduct. Plaintiff Lindenbaum, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1.     Plaintiff Roberta Lindenbaum is a natural person and resident of Cuyahoga County, Ohio.

2.     Defendant Direct Energy is a limited liability company organized and existing under the laws of the State of Delaware. Direct Energy systemically and continuously conducts business throughout this District, the State of Ohio, and the United States. Direct Energy is registered to do business in Ohio with the Secretary of State and the Public Utility Commission. Direct Energy can be served through its registered agent, Corporate Creations Network Inc., located at 119 E. Court Street, Cincinnati Ohio 45202.

3.     John Doe Corporation 1 is a vendor or subcontractor of Direct Energy that did not identify itself on the initial call Plaintiff received on her residential landline telephone, described further below. The true identity of John Doe Corporation 1 will be revealed during discovery and Plaintiff will amend, or seek leave to amend, this Complaint at that time if necessary.

4.     John Doe Corporation 2 is a vendor or subcontractor of Direct Energy that did not identify itself on the second call Plaintiff received on her residential landline, described further below. The true identity of John Doe Corporation 2 will be revealed during discovery and Plaintiff will amend, or seek leave to amend, this Complaint at that time if necessary. John Doe Corporation 1 and John Doe Corporation 2 may be the same entity.

5.     John Doe Corporations 3 through 10 are additional vendors or subcontractors of Direct Energy that are currently unknown to Plaintiff but whose

identities may become known during discovery. Plaintiff will amend, or seek leave to amend, this Complaint to name these additional parties if necessary.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), which is a federal statute.

7.      This Court has personal jurisdiction over Defendants because Defendants solicit significant consumer business in this District, Direct Energy has entered into contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed, to this District. Specifically, Plaintiff received the prerecorded calls at issue on her residential landline telephone, in this District.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Direct Energy conducts a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, and/or was directed to, this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON ALLEGATIONS OF FACT

9.      Direct Energy is a certified supplier in the Ohio Energy Choice Program, offering electricity and natural gas to consumers in Ohio.

10.      In recent years, energy suppliers such as Direct Energy have turned to unsolicited telemarketing as a way to increase their customer base. Widespread telemarketing is a primary method by which Direct Energy solicits new customers.

11.     John Doe Corporations 1-10 initiated prerecorded telemarketing calls to the residential landline telephone numbers of Plaintiff and the Classes to promote Direct Energy in violation of the TCPA. Direct Energy, or one of Direct Energy's vendors, hired John Doe Corporations 1-10 to originate new customers, making Direct Energy liable for their illegal telemarketing conduct.

12.     The TCPA prohibits companies, such as Direct Energy, from placing calls using an artificial or prerecorded voice ("prerecorded calls") when making calls to residential landline telephones without first obtaining consent.

13.     Direct Energy has violated, and continues to violate, the TCPA and its implementing regulations by placing, or having placed on its behalf, prerecorded calls to residential landline telephone subscribers (a) who have not expressly consented to receiving such calls and/or (b) who have expressly requested ***not*** to receive such calls.

14.     As Congress recognized:

Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.[1]

15.     Senator Larry Pressler, one of the original drafters of the TCPA, explained the need for the TCPA by observing that "[u]nlike other communications media, the telephone commands our instan[t] attention. Junk mail can be thrown away. Television commercials can be turned off. The telephone demands to be answered." 137 Cong. Rec. S18785 (daily ed. Nov. 27, 1991) (statement of Sen. Pressler).

---

[1] Pub. L. No. 102-243 § 2(6, 12) (1991), codified at 47 U.S.C. § 227.

16.     As explained by the Federal Communications Commission ("FCC")[2], the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

17.     Yet, in violation of this rule, Defendants fail to obtain any prior express written consent to place prerecorded calls to consumers' residential landline telephone numbers.

18.     Consumer complaints about Direct Energy's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- Calls ALL DAY EVERYDAY!!! I literally get at least 6 to 7 calls a day.[3]
- they call like 12 times a day.[4]
- They call me about 6 to 8 times a day; used to be more, but they will call 2 or 3 times back to back. Never a voicemail.[5]
- They don't stop calling even after you answer and say you are not interested.[6]
- I have blocked them for months and they keep calling and harassing me.[7]
- Horrible business. They've been calling me non stop, saying they are my energy company (they are not) or that they are my energy provider (they are not) and that my contract needs renewed. Several different employees have called all with different stories and methods of trying to get me to switch over to them. They quote different rates every time. Nothing about them seems legit. They have no scruples no morals. One dude even said if I didn't switch over to them he'd cut off my power and charge me a $175 disconnection fee. Again, they aren't my supplier. He was trying to scare me of course.[8]

---

[2] The FCC is the federal agency given the administrative authority to interpret and enforce the TCPA. 47 U.S.C. § 227(b)(2).

[3] https://800notes.com/Phone.aspx/1-855-255-6531/2

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] https://www.bbb.org/us/tx/houston/profile/electric-companies/direct-energy-lp-0915-16000037/customer-reviews

[8] *Id.*

- It is Direct Energy, which started calling from various caller ID's a few weeks ago. [9]
- Left 3 voicemails in a 2 hour span saying to call back with a copy of my electric bill to see if I qualify for special offers.[10]

19.     In response to the liability risk associated with the TCPA, numerous commercially available services exist to help companies that call others using prerecorded voices, such as Defendants, to identify telephone numbers that are on the Nation Do Not Call Registry or are cellular subscribers and otherwise ensure that calls are only made to consenting consumers. For instance, companies such as Infutor, Nextmark List, and Contact Center Compliance advertise their ability to instantly identify and flag disconnected telephone numbers from cellular telephone number data lists on a recurring basis (such as weekly or monthly). This type of service can identify disconnected numbers before they are recycled, thereby alerting mobile marketers that any consent associated with those telephone numbers has been terminated.

20.     Despite the FCC's ruling, the industry guidelines, and the commercial availability of programs that help callers filter out non-consenting numbers, Defendants fail to take the necessary steps to ensure that their prerecorded calls are placed only to consenting recipients.

21.     Rather, in an effort to increase revenue and skirt additional costs, Defendants simply ignore the law when contacting individuals via prerecorded calls to their residential landline telephones.

---

[9] https://800notes.com/Phone.aspx/1-872-772-2549
[10] https://800notes.com/Phone.aspx/1-419-424-0717

22.     Indeed, Direct Energy, and its affiliates, have been sued ***more than two dozen times*** before for alleged TCPA violations.[11]

23.     Direct Energy, and its affiliates, have also faced a number of state regulatory investigations and allegations regarding their marketing practices. *See e.g. PURA Investigation into Direct Energy Services, LLC's Trade Practices – Audit of Marketing*, PUC Docket 13-07-17 ($1.5 million fine and settlement in 2019 was reported as the largest Connecticut's Public Utilities Regulatory Authority has ever imposed on an electric supplier, and additionally prohibited Direct Energy for a period of time from enrolling new customers and required Direct Energy to undergo a compliance audit);

---

[11] *See Mathias v. Direct Energy, LP*, Case No. 1:14-cv-00999 (D. Colo. filed Apr. 8, 2014); *Badillo v. Direct Energy, LP*, Case No. 4:16-cv-01441 (S.D. Tex. filed May 23, 2016); *Groves v. Direct Energy, LP*, Case No. 4:16-cv-02143 (S.D. Tex. filed July 19, 2016); *Getso v. Direct Energy, LP*, Case No. 3:16-cv-02142 (N.D. Tex. filed July 25, 2016); *Velar v. Direct Energy Services, LLC*, Case No. 1:17-cv-00176 (N.D. Ind. Filed Apr. 24, 2017); *Aronson v. Direct Energy*, Case No. GD-17-016675 (Allegheny County C.P. filed Dec. 6, 2017); *Dickson v. Direct Energy, LP*, Case No. 5:18-cv-00182 (N.D. Ohio filed Jan. 24, 2018); *Gomez v. Direct Energy, LP*, Case No. 1:18-cv-00301 (M.D. Pa. filed Feb. 6, 2018); *Shackelford v. Direct Energy LP*, Case No. 4:18-cv-02727 (S.D. Tex. filed Aug. 8, 2018); *Hunter v. Direct Energy Services, LLC*, Case No. 4:18-cv-00612 (E.D. Tex. filed Aug. 24, 2018); *Shelton v. Direct Energy, LP*, Case No. 2:18-cv-04375 (E.D. Pa. filed Oct. 9, 2018); *Causevic v. Direct Energy Services, LLC*, Case No. 1:18-cv-07176 (N.D. Ill. filed Oct. 26, 2018); *Burk v Direct Energy, LP*, Case No. 4:19-cv-663 (S.D. Tex. filed Feb. 25, 2019); *Garcia v Direct Energy, LP*, Case No. 3:19-cv-531 (N.D. Tex. filed Mar. 4, 2019); *Harris v. Direct Energy Services, LLC*, Case No. 2:19-cv-02082 (C.D. Ill. filed April 8, 2019); *Perrong v. Direct Energy, LP*, Case No. 2:19-cv-02373 (E.D. Pa. filed May 31, 2019); *Murphy v. Direct Energy Services, LLC*, Case No. 3:19-cv-01454 (N.D. Tex. filed June 19, 2019); *Bogan v Direct Energy, LP*, Case No. 5:19-cv-379 (E.D.N.C. filed Aug. 28, 2019); *Fulwiley v. Direct Energy Services, LLC*, Case No. 1:19-cv-07495 (N.D. Ill. filed Nov. 13, 2019); *Maglione v. Direct Energy, LP*, Case No. 4:19-cv-04663 (S.D. Tex. filed Nov. 27, 2019); *McDermet v. National Gas & Electric, LLC*, Case No. 1:19-cv-12620 (D. Mass. filed Dec. 31, 2019); *Katilas v. Direct Energy, LP*, Case No. 2:20-cv-01323 (E.D. Pa. filed Mar. 6, 2020); *Shelton v. Direct Energy, LP*, Case No. 2:20-cv-03966 (E.D. Pa. filed Aug. 11, 2020); *Schweitzer v. Direct Energy, LP*, Case No. 2:20-cv-04436 (E.D. Pa. filed Sep. 10, 2020).

*Commission's Own Motion re: Direct Energy Services, LLC*, Case No. U-18121 (2017 settlement with Michigan Public Service Commission over consumer sales practices and agent oversight issues); I*n the Matter of the Complaint of the Staff of the Public Service Commission v. Direct Energy Services, LLC*, Case No. 9614 (Second Amended Complaint filed by Maryland's Public Service Commission on Oct. 16, 2019 alleges various telephone and in-person sales practices that violate Maryland's consumer protection laws).

24.     Defendants know or should know that their prerecorded calls are placed to non-consenting residential landline telephone subscribers. Ultimately, Defendants are responsible for verifying telephone number ownership and obtaining consent before placing prerecorded calls to residential landline telephone subscribers.

25.     Defendants were, and are, aware that their unsolicited prerecorded calls were, and are, unauthorized as they fail to obtain prior express written consent before placing those calls to consumers. Ultimately, consumers are forced to bear the costs of receiving these unsolicited prerecorded calls.

26.     By placing the unsolicited prerecorded calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the sending and receipt of such prerecorded calls, a loss of value realized for the monies consumers paid to their carriers for the receipt of such prerecorded calls, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

27.     In response to Defendants' unlawful conduct, Plaintiff filed this action seeking (a) an injunction requiring Defendants to cease all unsolicited prerecorded calling activities and, (b) an award of actual or statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

### FACTS SPECIFIC TO PLAINTIFF ROBERTA LINDENBAUM

28.     Plaintiff Lindenbaum is the registered account owner and regular user of a residential landline telephone number 216-xxx-5581.

29.     The 5581 telephone number has been registered on the National Do Not Call Registry since August 31, 2003.

30.     On November 29, 2020 at 6:13 pm, Plaintiff received an unsolicited, pre-recorded phone call on her residential landline telephone from, or on behalf, of Defendants.

31.     The November 29, 2020 call used a pre-recorded voice and stated that John Doe Corporation 1 was calling to offer Plaintiff energy services.

32.     Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation 1's telephone representatives.

33.     John Doe Corporation 1's phone representative asked Plaintiff for her billing account number and asked if Plaintiff received any government assistance with her utility bill and confirmed that Defendant Direct Energy would be the energy supplier.

34.     On December 2, 2020 at 7:39 pm Plaintiff received a second unsolicited, pre-recorded phone call on her residential landline telephone from, or on behalf, of Defendants.

35.     Again, just like before, Plaintiff pressed "1" to speak with a live person and was connected with one of John Doe Corporation 2's telephone representatives.

36.     John Doe Corporation 2's phone representative asked Plaintiff for her billing account number and asked if Plaintiff received any government assistance with her utility bill and confirmed that Defendant Direct Energy would be the energy supplier.

37.     Plaintiff was annoyed and inconvenienced by these *multiple*, unwanted invasions of her privacy on her residential landline, forcing her to spend time and effort to determine exactly who was attempting to solicit her and for what, and to get them to stop.

38.     Plaintiff has never provided prior express written consent to Defendants to receive prerecorded calls to her on the 216-xxx-5581 landline number.

39.     Defendants failed to obtain prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

40.     By placing the prerecorded calls as alleged herein, Defendants have caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the prerecorded calls disturbed Plaintiff's use and enjoyment of her residential phone, in addition to the wear and tear on the phone's hardware (including the phone's battery).

10

41.     In order to redress these injuries, Plaintiff, on behalf of herself and the other members of the Classes, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded calls to residential landline telephones.

42.     On behalf of the Classes, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited pre-recorded calling activities and an award of actual or statutory damages to the class members, together with costs and reasonable attorneys' fees.

## DIRECT ENERGY'S LIABILITY FOR TELEMARKETING CALLS

43.     Direct Energy is a "person," as defined by 47 U.S.C. § 153(39).

44.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. § 227(b)(2).

45.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

46.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, FCC 07-232, Declaratory Ruling, ¶ 10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

47.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling

holding that sellers such as Direct Energy may not avoid liability by outsourcing

telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because "[s]ellers
> may have thousands of 'independent' marketers, suing one or a few of
> them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013)

("May 2013 FCC Ruling") (internal citations omitted).

48.     More specifically, the May 2013 FCC Ruling held that, even in the

absence of evidence of a formal contractual relationship between the seller and the

telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if

not actual) authority" to make the calls. *Id.* at 6586 (¶ 34).

49.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability,

including the assertion that a seller's liability requires a finding of formal agency and

immediate direction and control over the third-party who placed the telemarketing call.

*Id.* at 6587 n.107.

50.     The May 2013 FCC Ruling further clarifies the circumstances under

which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows
> the outside sales entity access to information and systems that normally

would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 (¶ 46)

51.     Direct Energy is legally responsible for ensuring that the company that made the calls complied with the TCPA, even if Direct Energy did not itself make the calls.

52.     Direct Energy knowingly and actively accepted business that originated through the illegal telemarketing calls from the company that made the calls.

53.     In fact, Direct Energy accepted the business stemming from illegal calls made by the John Doe Corporation Defendants even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

54.     Despite these facts, Direct Energy has continued to fail to monitor the third parties operating on its behalf.

55.     By hiring a company to make calls on its behalf, Direct Energy "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

56.     Moreover, Direct Energy maintained interim control over the actions of the party that made the calls.

57.     For example, Direct Energy had absolute control over whether, and under what circumstances, it would accept a customer.

58.     Furthermore, Direct Energy had day-to-day control over the actions of the calling party, including the ability to prohibit it from using a pre-recorded message to contact potential customers of Direct Energy.

59.     Additionally, Direct Energy restricted the geographic location of the calls made by the company promoting Direct Energy.

60.     Direct Energy also gave interim instructions to the company that made the calls by providing the volume of calling and contracts it would purchase.

61.     Moreover, Direct Energy instructed the calling party to transfer potential customers over to a third-party verification company that Direct Energy had hired to complete the sign-up process.

62.     In other words, Direct Energy allows its vendors to bind Direct Energy in contract following an illegal telemarketing call, such as the ones Plaintiff received.

63.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ALLEGATIONS

64.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure

23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks

certification of the following Classes:

> **Robocall Residential Landline Telephone No Consent Class:** All
> persons in the United States who from a date four years prior to the filing
> of the initial complaint to the present: (1) Defendants (or a third person
> acting on behalf of Defendants) called; (2) on the person's residential
> landline telephone number using an artificial or prerecorded voice; and (3)
> for whom Defendants lacked prior express consent to call that residential
> landline telephone number at the time the call was made.

> **Do Not Call Registry Class:** All persons in the United States who from a
> date four years prior to the filing of the initial Complaint to the present: (1)
> Defendants (or a third person acting on behalf of Defendants) called more
> than one time on his/her residential telephone number; (2) within any 12-
> month period (3) where the residential telephone number had been listed
> on the National Do Not Call Registry for at least thirty days; (4) for the
> purpose of selling Direct Energy's products and services; and (5) for
> whom Defendants lacked prior express consent to call that residential
> telephone number at the time the call was made.

65.     The following people are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendants,

Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the

Defendants or their parents have a controlling interest, and its current or former

employees, officers and directors; (3) persons who properly execute and file a timely

request for exclusion from the Classes; (4) persons whose claims in this matter have been

finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and

Defendants' counsel; and (6) the legal representatives, successors, and assigns

of any such excluded persons.

66. Plaintiff anticipates the need to amend the definition of the Classes following class discovery, including discovery revealing the manner by which Defendants claim they obtained prior express consent to place autodialed and/or pre-recorded calls to the Plaintiff.

67. **Numerosity**: The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have placed unsolicited calls to hundreds or thousands of consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendants' records.

68. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiff is a member of the Classes defined herein, and if Plaintiff is able to recover for the claims set forth in this Complaint, then the other members of the Classes will have a right to recover as well.

69. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiff has no conflicts with, or interests antagonistic to, those of the Classes, and Defendants have no defenses unique to Plaintiff.

70. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate

over any questions that may affect individual members of the Classes. Common

questions for the Classes include, but are not necessarily limited to the following:

a) Whether John Doe Corporations 1 and 2 made calls with a prerecorded message;

b) Whether Defendants' conduct constitutes a violation of the TCPA;

c) Whether Direct Energy is liable for the conduct of their third-party vendors;

d) Whether members of the Robocall Residential Landline No Consent Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct;

e) Whether Defendants obtained prior express consent to contact any class members;

f) Whether Defendants' calls constitute telemarketing or were dual purpose messages; and

g) To the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members.

71. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action. Individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies

presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

72.     Adequate notice can be given to the members of the Classes directly using information maintained in Defendants' records or through notice by publication.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Robocall Residential Landline No Consent Class)

73.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

74.     Defendants and/or their agents placed unsolicited calls to residential landline telephone numbers belonging to Plaintiff and the other members of the Robocall Residential Landline No Consent Class.

75.     These calls were made without the prior express written consent of the Plaintiff and the other members of the Robocall Residential Landline No Consent Class to receive such calls.

76.     These calls, including those to Plaintiff, utilized an artificial or prerecorded voice.

77.     To the extent prior written express consent was required, Defendants failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive pre-recorded calls was not a condition of purchase or use of any goods or service. Neither was oral consent provided.

78.     To the extent Direct Energy's agent, John Doe Corporations 1-10, placed the calls at issue, Direct Energy's agent acted with actual or apparent authority and/or in accordance with a contract between Direct Energy and its agent, John Doe Corporations 1-10. Direct Energy's agent acted under Direct Energy's control and for Direct Energy's benefit and/or with Direct Energy's knowledge and approval. Direct Energy controlled its agent and knew about, and received the benefits of, the agent's calling activities. Direct Energy ratified the agent's conduct with respect to the placing of such calls.

79.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Robocall Residential Landline No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

80.     In the event that the Court determines that Defendants' conduct was willfull and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Residential Landline No Consent Class.

### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

81.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

82.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations. Those regulations were promulgated to protect

19

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

83.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

84.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

85.    47 C.F.R. § 64.1200(d) further provides that:

> [n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

86.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to residential telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These

consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

87.     Defendants also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any do not call list, and by failing to record and honor do not call requests.

88.     Defendants placed more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such prerecorded calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive prerecorded calls from Defendants, and/or Defendants do not have a current record of consent to place prerecorded calls to them.

89.     Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

90.     Defendants have, therefore, violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one prerecorded call in a 12-month period made by, or on behalf of, Direct Energy in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section

47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

91.     In the event that the Court determines that Defendants' conduct was willfull and knowing, it may, under 47 U.S.C. § 227(c)(5)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Roberta Lindenbaum, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Lindenbaum as the representative of the Classes and appointing her attorneys as Class Counsel;

B.     An award of actual and statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

C.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

D.     An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

E.     An order requiring Defendants to identify any third-party involved in the prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

F.     An injunction requiring Defendants to cease all unsolicited prerecorded calling activities, and otherwise protecting the interests of the Classes;

G.      An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

H.      An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

I.      Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

**ROBERTA LINDENBAUM**, individually and on behalf of Classes of similarly situated individuals,

Dated: December 8, 2020

By:   /s/Adam T. Savett_____
        One of Plaintiff's Attorneys

Adam T. Savett (VA73387)
adam@savettlaw.com
Savett Law Offices LLC
2764 Carole Lane
Allentown PA 18104
Telephone: (610) 621-4550
Facsimile: (610) 978-2970

Attorneys for Plaintiff and the Putative Classes